IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-30604-can7 |
| Timothy Carl Ferguson, ) | |
| Carolyn Sue Ferguson, ) | |
| Debtors. ) | Chapter 7 |

# MEMORANDUM OPINION OVERRULING CREDITOR RANDY BURLESON'S PRECLUSION ARGUMENTS

After the Chapter 7 Debtors Timothy and Carolyn Ferguson waived their discharge,[1] they consented to a $150,000 judgment in a creditor's fraud-based state court lawsuit against them. The creditor, Randy Burleson, in turn filed a $150,000 proof of claim against the Debtors' bankruptcy estate. The Chapter 7 Trustee objected to Burleson's proof of claim, arguing that, based on the merits of the underlying lawsuit, the Debtors do not legally owe Burleson $150,000. Burleson asks this Court to determine that doctrines of issue and claim preclusion bar the Trustee from objecting to his claim. But under the circumstances of this case, the Court finds that the Trustee is not barred from objecting, for the reasons set forth below.

*Background*

The facts are undisputed. Randy Burleson, acting through an entity he owned, leased premises to the Debtors' business entity, TC Liquor & Smoke Shops, Inc. The Debtors did not personally guarantee the lease. Burleson sought to make the Debtors personally liable for his losses,[2] however, by arguing that the "corporate veil" shielding them from personal liability

---

[1]    11 U.S.C. § 727(a)(10).
[2]    Burleson's entity, Burly, Inc. entered into the lease with the Debtors' entity, TC Liquor & Smoke Shops, Inc. According to the state court petition attached to Burleson's proof of claim, Burly, Inc. then assigned the lease to a third party. Burleson apparently personally guaranteed TC Liquor's performance under the lease to the third party. Burleson alleges he paid $91,908.26 to the third party after TC Liquor defaulted, and sought to collect that amount, plus interest, attorney fees, and other costs, from the Debtors.

1

should be pierced for fraud.[3] The lawsuit was still pending when the Debtors filed their joint Chapter 7 petition several years later. Among other creditors, the Debtors scheduled Burleson as holding a claim for $80,000 for "deficiency on lease."

Patricia Ann Brown was appointed as the Chapter 7 Trustee, and opened an asset estate.[4] Burleson timely filed an unsecured proof of claim (Claim 7-1) for "lease payments" totaling $111,747.76.[5] The Trustee objected to Claim 7-1 on the grounds the debt was contingent, unliquidated, and unsupported by documentation. In response, Burleson filed an amended claim (Claim 7-2) for the same amount, but attached various documents. The Trustee objected to Claim 7-2, again arguing that the debt was still contingent and unliquidated.

At the hearing on the claim objection, the Court agreed with the Trustee. Noting that the state court trial on Burleson's suit was still months away, the Court observed that the Trustee could move to estimate the claim under 11 U.S.C. § 502(c) if the Trustee desired to close the bankruptcy estate before the state court trial was held. The Trustee then filed a § 502(c) motion to estimate the claim, but before the hearing, Burleson entered into the consent judgment with the Debtors in state court. Burleson then filed Claim 7-3 for $150,000. Finding that the filing of the amended claim for $150,000 rendered the Trustee's estimation motion moot, the Court advised that if the Trustee still had reason to challenge Burleson's claim, she would need to file a new objection. The Trustee did so, leading to the present dispute.

For purposes of this dispute, the parties agreed to bifurcate the issues to allow the Court to rule on the legal issue of whether the Trustee is barred by the state court judgment before deciding the merits of the Trustee's claim objection.

---

[3] *See generally In re Loganbill*, 554 B.R. 871 (Bankr. W.D. Mo. 2016) (discussing piercing of the corporate veil and alter ego theories under Missouri law).
[4] Reportedly, the Trustee is holding about $40,000 in the estate.
[5] $91,908.26 plus $19,839.50 in attorney fees paid to Burleson's attorney.

*Discussion*

Burleson argues that the Trustee is bound by the state court judgment and is therefore precluded under *Rooker-Feldman*, full faith and credit, res judicata, and waiver doctrines from objecting to his claim. The Trustee responds that she is not bound by the state court's consent judgment, for two reasons: she was not a party to the state court action nor in privity with the parties, and the state court did not decide the matter on the merits. The Court agrees with the Trustee.

*Introduction: Standards for Resolving Objections to Claim*

A filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). A claim is not allowed to the extent that it is unenforceable against the debtor, "under any agreement or applicable law." 11 U.S.C. § 502(b)(1). "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. Proc. 3001(f).

Once the court is satisfied that the proof of claim is filed in accordance with the applicable rules, the burden is on the objector to show, through rebuttal evidence, that the claim should be wholly or partially disallowed. *In re Dove-Nation*, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004). If the objecting party comes forward with sufficient rebuttal evidence to support a claim objection, then the ultimate burden of persuasion shifts to the claimant to show entitlement to the claim. *Id*; *see also In re Thompson*, 260 B.R. 484, 487 n.10 (Bankr. W.D. Mo. 2001) (describing the burden-shifting framework). In the context of the Trustee's claim objection, the Court considers each of Burleson's arguments in turn.

*Rooker-Feldman*

Burleson argues that the *Rooker-Feldman* doctrine bars the Trustee from objecting to his claim. The *Rooker-Feldman* doctrine operates to preclude the losing party in state court from attacking the state court judgment – in effect, "appealing" the state court judgment – in federal court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 287 (2005) (*Rooker-Feldman* confined to state court "losers"); *Knutson v. City of Fargo*, 600 F.3d 992, 995 (8th Cir. 2010) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)) ("[A] party losing in state court is barred from seeking what in substance would be an appellate review of the state judgment."). Here, it is undisputed that the Trustee was never a party to Burleson's state court lawsuit against the Debtors.[6] The *Rooker-Feldman* doctrine therefore does not apply.

***Full Faith and Credit, Collateral Estoppel, And Res Judicata***

Burleson also argues that other claim and issue preclusion doctrines bar the Trustee from objecting to his claim. The Court disagrees.

First, with respect to "Full Faith and Credit": The judicial proceedings of any state court "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. This means that a federal court must give a state court judgment the same preclusive effect as it would receive under the law of the state where the decision was rendered. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Both issue and claim preclusion fall within the broad umbrella of full faith and credit. *See Knutson*, 600 F.3d at 996 (citing *Exxon*

---

[6] The Trustee attempted to intervene after the consent judgment was entered, but the state court apparently determined that it had no jurisdiction to modify the judgment. Although Burleson argued at oral argument that somehow this was another factor barring the Trustee from objecting, Burleson did not plead laches or estoppel. The Court thus declines to consider these equitable arguments.

*Mobil*, 544 U.S. at 293). Under the plain meaning of the full faith and credit statute, federal courts must apply state preclusion law in their analysis. *Id.*; *see also Marrese v. American Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 386 (1985); *Bicknell v. Stanley*, 118 B.R. 652, 660–61 (S.D. Ind. 1990). Full faith and credit applies equally in bankruptcy cases as it does in other federal cases. *See, e.g., In re Byard*, 47 B.R. 700 (Bankr. M.D. Tenn. 1985).

Turning to Missouri preclusion law, "*[r]es judicata* precludes the same parties from relitigating the same claim ("claim preclusion"); collateral estoppel precludes the same parties from relitigating an issue which has been previously adjudicated ("issue preclusion")." *Stine v. Warford*, 18 S.W.3d 601, 605 (Mo. Ct. App. 2000) (citing *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979)). Collateral estoppel requires:

> (1) the issue decided must be identical; (2) the prior litigation must have resulted in a final decision on the merits; (3) the party to be estopped must have been a party or in privity with a party to the prior adjudication, and (4) that party must have had a full and fair opportunity to litigate the issue in the prior suit.

*Stine*, 18 S.W.3d at 606 (citing *Galaxy Steel & Tube, Inc. v. Douglass Coal & Wrecking, Inc.,* 928 S.W.2d 420, 422 (Mo. Ct. App. 1996)). A judgment "on the merits" for collateral estoppel purposes means a judgment "rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and *without trial*." *Metal Exch. Corp. v. J.W. Terrill, Inc.*, 173 S.W.3d 672, 677 (Mo. Ct. App. 2005) (emphasis added) (quoting *Hayes v. United Fire & Cas. Co.,* 3 S.W.3d 853, 856 (Mo. Ct. App. 1999)).

In his suggestions in support, Burleson states that a consent judgment is "accorded the same force as other judgments and is conclusive of matters adjudicated." This Court agrees that a consent judgment is conclusive of matters adjudicated and may be final and binding in some instances, but notes that a different standard applies here: the consent judgment must be "on the

5

merits" and "rendered after argument and investigation." This Court cannot find any cases that have given collateral estoppel effect to a consent judgment under Missouri law, and Burleson cites none. This is because a consent judgment, and specifically the one entered here, is not "on the merits" for purposes of collateral estoppel. For this reason alone, this Court declines to apply collateral estoppel against the Trustee. *See, e.g., State v. Huesemann*, 942 S.W.2d 424, 429–30 (Mo. Ct. App. 1997) (noting that the factfinder accepted the parties' stipulations and did not "independently review" the facts, and thus that the consent order entered pursuant to a settlement between the parties was not "on the merits"); *Seifner v. Treasurer of State*, 362 S.W.3d 59, 65 (Mo. Ct. App. 2012) (because the administrative body failed to engage in independent fact-finding and instead accepted the parties' stipulations, the consent order was not a judgment "on the merits," and collateral estoppel was inappropriate); *Ishmon v. St. Louis Bd. of Police Comm'rs,* 415 S.W.3d 144, 151 (Mo. Ct. App. 2013) ("Consent Judgment vacated and this cause is remanded to the trial court for adjudication on the merits").

Here, the consent judgment was entered into without a trial. Although it is signed by a state court judge, the judge's only role is to ensure that there is consent by all parties. *See Mo. Rev. Stat.* § 517.121. For these reasons, the consent judgment is insufficient to support collateral estoppel. This Court is also concerned with the privity requirement for collateral estoppel, but will address this requirement in the context of res judicata, which also requires privity.

Res judicata, unlike collateral estoppel, may be appropriate where the issue was not actually litigated. *See King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 500 (Mo. 1991). Res judicata requires:

> 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made.

6

*State v. White*, 952 S.W.2d 716, 718 (Mo. Ct. App. 1997). To satisfy the third requirement (identity of persons and parties to the action), it is sufficient that the two parties are in privity. This means "the interest of the party and non-party are so closely intertwined that the non-party can fairly be considered to have had his or her day in court." *Stine*, 18 S.W.3d at 605 (citing *Burke v. L & J Food and Liquor, Inc.,* 945 S.W.2d 662, 664 (Mo. Ct. App. 1997)). To be bound by the state court judgment through res judicata, the Trustee must be in privity with one of the state court litigants.

"It has long been recognized that for privity to exist, the interest between a debtor and a trustee must be so similar that "[t]he [debtor] was [the trustee's] virtual representative in the prior action." *In re Fordu*, 209 B.R. 854, 863 (B.A.P. 6th Cir. 1997), *aff'd*, 201 F.3d 693 (6th Cir. 1999) (internal quotations omitted) (quoting *In re Shuman*, 78 B.R. 254, 256 (B.A.P. 9th Cir. 1987)). One court has said that the trustee is not the "virtual representative" of one creditor or the debtor, because the trustee has much broader duties. *See Shuman*, 78 B.R. at 256; *see also In re Marlar*, 252 B.R. 743, 757 (B.A.P. 8th Cir. 2000) (citation and internal quotations omitted) ("Because the trustee is invested with extraordinary rights . . . as a general representative of . . . creditors, he is not bound, either on res judicata or judicial collateral estoppel grounds by the prior state proceedings."); *In re Stepp*, no. 11-16121, 2013 WL 4853328, at *4–*5 (Bankr. N.D. Ohio Sept. 22, 2013) (finding that the trustee was not in privity with the debtor's ex-spouse as to a divorce proceeding because the trustee did not actively participate in the divorce proceeding or succeed to the ex-spouse's interest). Although courts have on occasion held that the trustee may represent the interests of other creditors in litigation, *see, e.g., U.S. v. Schnick*, 66 B.R. 491 (W.D. Mo. 1986), the opposite is not necessarily true. *See, e.g., Shuman*, 78 B.R. at 256 ("The

defense of a cause of action by a debtor pre-bankruptcy does not necessarily represent the rights of a bankruptcy trustee.").

In this bankruptcy case, the Trustee is a fiduciary for all unsecured creditors of the bankruptcy estate. Because she owes a duty to the estate, she cannot be in privity with either the Debtors or Burleson in the state court lawsuit under the circumstances of this case. Unprotected by the automatic stay,[7] the Debtors were defending a lawsuit to liquidate a nondischargeable debt. Presumably, they sought to decrease their liability and the risk of litigation by agreeing to the consent judgment, and had their own interests in mind – such as increasing Burleson's share of the assets of the estate so they would owe him less on any nondischargeable judgment.[8] Burleson was likewise acting in his own self-interest. Presumably, Burleson was trying to get as big a judgment as possible, and entered into the consent judgment to avoid the inherent risks of litigation. Neither party was the Trustee's "virtual representative" looking out for the interests of all creditors in the bankruptcy case.

In sum, neither the Debtors' nor Burleson's interest was so similar that either could be said to be in privity with the Trustee. Without privity, res judicata does not bind the Trustee from attacking Burleson's consent judgment.

*Conclusion*

For these reasons, the Court concludes as a matter of law that the Trustee is not barred from challenging Burleson's claim through her claim objection. This Court notes, however, that Burleson's claim benefits from prima facie validity, and that the Trustee shoulders the burden to produce rebuttal evidence to show why the claim should be disallowed in whole or in part. If the

---

[7] The automatic stay terminated when the Debtors' discharge was denied. 11 U.S.C. § 362(c)(2)(C).
[8] Burleson had taken an active role in the Chapter 7 case by filing a § 727 denial of discharge complaint against the Debtors. He dismissed his complaint after the Debtors waived their discharge in response to a separate § 727 complaint filed by the United States Trustee.

Trustee adduces such evidence, the burden would then shift back to Burleson, who has the burden of proof on his veil-piercing theory under applicable Missouri law.[9] The Trustee's objection to Burleson's Claim 7-3 is continued to a phone status conference on February 28, 2017 at 10:30 a.m., at which time the parties should be ready to set an evidentiary hearing on the merits.

IT IS SO ORDERED.

/s/ Cynthia A. Norton
JUDGE CYNTHIA A. NORTON
United States Chief Bankruptcy Judge

Dated: February 10, 2017

---

[9] *Raleigh v. Illinois Dep't. of Revenue*, 120 S. Ct. 1951 (2000) (bankruptcy law does not alter the burden of proof established by the substantive law creating the claim).